**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

IN RE APPLICATION OF THE
UNITED STATES OF AMERICA FOR
NONDISCLOSURE ORDER PURSUANT TO          Misc. Case. No. 14-480 (JMF)
18 U.S.C. § 2705(b) FOR GRAND JURY
SUBPOENA #GJ2014032122836

**MEMORANDUM OPINION AND ORDER**

This Court is in receipt of an Application from the government pursuant to 18 U.S.C.

§ 2705(b) requesting that Twitter, Inc., be prohibited from notifying any person of the existence

or content of federal grand jury subpoena #GJ2014032122836 for a period of either ninety (90)

days, or until further order of this Court, whichever is shorter. See Application for Order

Commanding Twitter, Inc. Not to Notify Any Person of the Existence of Grand Jury Subpoena

[#1] (sealed) at 1. For the reasons stated below, the Court will not rule on the government's

Application until it has filed a public, redacted copy of its Application and Twitter has filed a

notice indicating whether it intends to be heard in this matter.

**I.        Background**

The present Application, made pursuant to 18 U.S.C. § 2705(b), is the third the Court has

received in recent weeks. With respect to the first two applications, the Court requested that

Yahoo!, Inc. and Twitter, respectively, intervene as respondents and indicate whether they wish

to be heard before the Court rules on the government's applications. See Amended Order, Misc.

Case No. 14-287 [#3] (D.D.C. Mar. 24, 2014); see also Amended Order, Misc. Case No. 14-296

[#3] (D.D.C. Mar. 24, 2014). In separate Orders, the Court also ordered the government to file

public, redacted copies of its applications because of the "common law right of access to court

documents" which requires that "as much material as possible [] be made public." Order, Misc.

Case No. 14-287 [#4] (D.D.C. Mar. 24, 2014); see also Order, Misc. Case No. 14-296 [#4] (D.D.C. Mar. 24, 2014). The government has since filed interlocutory appeals of those Orders—which were not final and did not address the merits of the applications—and moved Chief Judge Richard W. Roberts to reach the merits of the applications and issue the government's proposed orders himself. See Government's Appeal from Magistrate Judge's Orders Regarding Government's Application for Order Pursuant to 18 U.S.C. § 2705(b), Misc. Case No. 14-287 [#5-1] (sealed) (hereinafter Government's Appeal 14-287); see also Government's Appeal from Magistrate Judge's Orders Regarding Government's Application for Order Pursuant to 18 U.S.C. § 2705(b), Misc. Case No. 14-296 [#5-1] (sealed) (hereinafter Government's Appeal 14-296).[1]

The present Application, while related to a different grand jury investigation and subpoena, is identical to the previous two applications with respect to the legal issues raised.

## II.     Analysis

### A.  Twitter Should Be Heard Before a Final Order Is Issued

#### 1.  The First and Fifth Amendments Afford Twitter a Right to Be Heard

The government asks this Court to issue what is, essentially, a "gag order": Twitter would be prohibited from communicating certain information to a certain individual for a certain period of time. This would implicate Twitter's rights under the First Amendment because it would be both a content-based restriction of speech and a prior restraint on speech. See In re Sealing and Non-Disclosure of Pen/Trap/2703(d) Orders, 562 F. Supp. 2d 876, 881-883 (S.D. Tx. 2008) (holding that an open-ended gag order violates the First Amendment) (hereinafter In re Sealing).

---

[1] The appeals—each of which is thirteen pages long—are nearly identical and were apparently filed under seal because each contains a single sentence on the second page explaining the general basis for the underlying grand jury investigation. Chief Judge Roberts has authorized their sealing. See Order, Misc. Case No. 14-287 [#7] (D.D.C. Mar. 27, 2014); Order, Misc. Case No. 14-296 [#7] (D.D.C. Mar. 27, 2014).

Magistrate Judge Stephen Smith's opinion in <u>In Re Sealing</u> is persuasive, and his conclusions regarding the First Amendment rights at issue when a gag order is issued are correct.

It is equally true that the Application implicates Twitter's due process rights under the Fifth Amendment. The Supreme Court has long recognized that "the right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society." <u>Joint Anti-Fascist Refugee Comm. v. McGrath</u>, 341 U.S. 123, 168 (1951) (Frankfurter, J., concurring) (quoted in <u>Goldberg v. Kelly</u>, 397 U.S. 254 (1970)). A content-based restriction on the fundamental right to free speech certainly meets this standard as the First Amendment is "hostil[e]" to such restrictions. <u>Consol. Edison Co. of New York, Inc. v. Pub. Serv. Comm'n of New York</u>, 447 U.S. 530, 537 (1980).

Defining the scope of "what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as the private interest that has been affected by governmental action." <u>Goldberg</u>, 397 U.S. at 263 (citing <u>Cafeteria & Restaurant Workers Union v. McElroy</u>, 367 U.S. 886, 895 (1961)). In this case, due process requires that Twitter be given an opportunity to be heard before the ninety-day gag order is issued. The government's need for the secrecy of the grand jury proceedings is protected by temporarily restraining Twitter from divulging any information about the underlying grand jury subpoena until after this Court issues a final ruling in this matter. At the same time, Twitter is given an affirmative opportunity to come before the Court and assert, if it chooses, its First Amendment rights.

### 2.  The Statutory Language Does Not Compel a Different Result

In its interlocutory appeals, however, the government takes a different view: "if the government demonstrates to the satisfaction of a court that there is reason to believe that notification of a subpoena's existence to any other person will result in one or more of the five enumerated conditions, the 'court *shall* enter such an order.'" <u>Government's Appeal 14-287</u> at 5; <u>Government's Appeal 14-296</u> at 5 (citing 18 U.S.C. § 2705(b)) (emphasis added to original quotation). This argument fails for two reasons. First, the Court has not yet issued a ruling on whether the government has carried its burden. The government presumably *will*, which is why the Court is granting the government the same preliminary relief that it seeks as final relief and thus Orders Twitter to not disclose information about the grand jury subpoena until this Court rules otherwise. Second, and more importantly, the Court *cannot* issue an order that would violate the Constitution by violating Twitter's due process rights. Thus, until Twitter has an opportunity to be heard, this Court will not issue a final order in this matter.

Instead, the government appears to believe that the appropriate course of action is for the Court to issue the gag order and for Twitter to either violate the order and defend itself in a contempt hearing or move to quash. Given the circumstances, however, those options place too much of a burden on Twitter. The government loses nothing by allowing Twitter to first be heard on whether it objects to being gagged. This Court has repeatedly emphasized this point, but will do so again: on a preliminary basis, this Memorandum Opinion and Order bars Twitter from disclosing any information about the grand jury subpoena at issue. Twitter should first be heard before the Court restricts its right to free speech.

### 3.   The Court has Inherent Power to Ask Non-Parties to Express Their Views

While § 2705(b) does not explicitly allow a service provider to serve as a respondent, it also does not *forbid* a service provider from doing so. Federal courts certainly have the inherent authority to ask individuals or organizations to intervene as *amicus curiae*. See, e.g., In re Application of the United States of America for an Order for Disclosure of Telecommunications Records and Authorizing the Use of a Pen Register and Trap and Trace, 405 F. Supp. 2d 435, 436 (S.D.N.Y. 2005) (On an *ex parte* application under 18 U.S.C. § 2703(d), the court "asked the Federal Defenders of New York, Inc. to appear as *amicus curiae*. The Court greatly benefited from the briefing provided by both sides.").

Here, Twitter cannot be asked to intervene as an *amicus* because Twitter is the object of the government's Application. Twitter is more appropriately considered a respondent, as it—and only it—will be affected by whatever order this Court ultimately issues. Thus, under the Court's own inherent authority, it is appropriate to ask Twitter to intervene as a respondent. See United States v. Moussaoui, 483 F.3d 220, 236 (4th Cir. 2007) ("Inherent powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'") (citing Link v. Wabash R.R. Co., 370 U.S. 626, 630-31 (1962)). Although a court should exercise caution in using its inherent powers, "a court has the inherent authority to control various aspects of the cases *before that court*." Moussaoui, 483 F.3d at 237 (emphasis in original). Asking Twitter to intervene as a respondent is an appropriate exercise of this Court's inherent authority, especially given the First and Fifth Amendment implications of not permitting Twitter to be heard.

**4.   The Government Has Already Failed to Respond to the Court's Concerns When Twitter Was Not Provided an Opportunity to Be Heard**

On March 14, 2013, Assistant United States Attorney John Han submitted an application under § 2705(b) to Magistrate Judge Deborah A. Robinson requesting that Twitter be prohibited from "disclos[ing] any and all records or information properly sought" under a particular grand jury subpoena. Order, Misc. Case No. 13-213 [#1] (D.D.C. Mar.14, 2013) (under seal). The same day, Judge Robinson ordered that, "by no later than March 28, 2013, the United States shall file a memorandum in which *In re Application of the United States for an Order Pursuant to 18 U.S.C. § 2705(b)*, [866 F. Supp. 2d 1172 (C.D. Cal. 2011)] and all other applicable authorities are addressed." Id. at 2. Judge Robinson never received any supplemental briefing, and she never issued the nondisclosure order in that matter.

In light of the government's failure to respond to Judge Robinson's order, this Court is exceedingly hesitant to proceed in an *ex parte* matter. The Central District of California case cited by Judge Robinson held that there is *no* statutory authority for the order that the government requests in this matter and that, as a result, a provider like Twitter cannot be gagged for even a short period of time. See In re Application of the United States for an Order Pursuant to 18 U.S.C. § 2705(b), 866 F. Supp. 2d 1172, 1179-80 (C.D. Cal. 2011) ("As presently written, however, the statutes do not contain that authorization. In contrast, however, the Rules of Criminal Procedure are clear, that a rule of secrecy cannot be imposed in these circumstances. Accordingly, the Government's application is denied."). Yet when Judge Robinson *ordered* the government to respond to the questions raised by this case, the government simply chose not to respond. Only by directly involving Twitter can this Court ensure that appropriate briefing will be filed.

**B.  The Common Law Right of Access to Court Records Requires That the Filings in this Matter Be Redacted and Made Public**

It is well established that the common law "presumes a right to access *all* judicial records and documents, but this presumption can be rebutted if the public's right of access is outweighed by competing interests." In re Application of the United States of America for an Order Pursuant to 18 U.S.C. Section 2703(D), 707 F.3d 283, 290 (4th Cir. 2013) (internal citations and quotations omitted, emphasis in original). In this Circuit, the appropriate test to balance these interests is somewhat unclear. In In re Application of New York Times Company for Access to Certain Sealed Court Records, 585 F. Supp. 2d 83, 92 (D.D.C. 2008) (hereinafter In re Application of New York Times), then-Chief Judge Royce Lamberth indicated that the six-factor test from United States v. Hubbard, 620 F.2d 293, 317-22 (D.C. Cir. 1981) should be used to determine whether the common law right of access applies. Under that test, a court should consider: (1) the need for public access to the documents at issue; (2) the public use of the documents; (3) the fact of objection and the identity of those objecting to disclosure; (4) the strength of the generalized property and privacy interests asserted; and (5) the possibility of prejudice.[2] Id. However, a decade before Chief Judge Lamberth's ruling, the D.C. Circuit itself did not apply the Hubbard test. See Washington Legal Found. v. U.S. Sentencing Comm'n, 89 F.3d 897, 899 (D.C. Cir. 1996). Instead, that court indicated that courts "should proceed to balance the government's interest in keeping the document secret against the public's interest in disclosure," and it specified that "the court should focus on the specific nature of the governmental and public interests as they relate to the document itself, as well as the general public interest in the openness of governmental processes." Id. (internal quotations and citations omitted).

---

[2] The sixth factor, "the purposes for which the documents were introduced," was fact-specific to Hubbard. See In re Application of New York Times, 585 F. Supp. 2d at 92, n.13.

Under either standard, however, it is clear that the government must make a public, redacted version of its Application available because it has no interest in preventing what amount to legal arguments from being made public. Furthermore, there is a significant public interest in allowing the public to know that the government is affirmatively seeking to silence an entity that is not a party to any judicial proceedings. All this Court is doing is making the government disclose its intention to silence Twitter. This would in no way prejudice the underlying grand jury proceedings or render them public in any way.

Although the government cites In re Sealed Case, 199 F.3d 522, 526 (D.C. Cir. 2000), for the proposition that "[u]nlike typical judicial proceedings, grand jury proceedings and related matters operate under a strong presumption of secrecy," the present matter is not really about grand jury secrecy. Instead, it is about interdicting Twitter from advising its subscriber of a grand jury subpoena. No details about the grand jury investigation could possibly be revealed by the government filing a redacted Application on a public docket. Even this Court does not know the details of the underlying investigation. The real question is whether it is appropriate to keep secret the fact that the government seeks to impose upon Twitter a prior restraint on its speech. That information should be included on the public docket in a redacted form.[3]

## III.   Conclusion

For the reasons stated above, the Court invites Twitter to intervene as a respondent in this matter so that it may be heard on the merits of the government's Application. Twitter has a Fifth Amendment due process right to be heard before being subjected to a gag order. This is certainly not to say that Twitter will prevail on a First Amendment claim—as Magistrate Judge Smith's

---

[3] The government also discusses the right of access that exists under the First Amendment, and it argues that the "experience and logic" test does not require that a public, redacted copy of its filing be made available. See Government's Appeal 14-287 at 11; Government's Appeal 14-296 at 11 (citing In re Application of the United States of America for an Order Pursuant to 18 U.S.C. Section 2703(D), 707 F.3d at 291). This is irrelevant because the common law *does* require that it be made available to the extent possible.

opinion made clear, the balance between the need for law enforcement to keep certain information secret and the First Amendment rights of an entity like Twitter suggest that nondisclosure is appropriate when the gag order is for a discrete period of time, see In re Sealing, 562 F. Supp. 2d at 895—but Twitter nevertheless has a right to be heard. Furthermore, the Court wishes to receive adversarial briefing on whether statutory authority exists for the government's requested order.

Although the government's Application remains under seal, the docket in this matter will be public. The Court will Order that the government file a public, redacted copy of the Application and its proposed order by April 2, 2014. Twitter should file a notice on ECF by April 4, 2014, indicating whether it wishes to be heard on the merits of the government's Application. All filings in this matter should be public and not under seal unless expressly authorized by the Court.

It is, therefore, **ORDERED** that the government shall file a public, redacted copy of the Application and draft order by April 2, 2014;

It is further **ORDERED** that Twitter shall file a notice of whether it intends to be heard by April 4, 2014; and

It is finally **ORDERED** that Twitter shall not disclose to any individual outside of Twitter any non-public information about federal grand jury subpoena #GJ2014032122836 pending the resolution of this matter and a further order from this Court.

**SO ORDERED**.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE